```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH SOCOLOSKI,                :      CIVIL ACTION
                                 :
        Plaintiff,               :      NO. 11-3508
                                 :
    v.                           :
                                 :
SEARS HOLDING CORP.              :
and                              :
SEARS, ROEBUCK and CO.,          :
                                 :
        Defendants.              :
```

### MEMORANDUM AND ORDER

**JOYNER, C.J.**                                          **July 31, 2012**

Before the Court for consideration are Defendants' Motion for Summary Judgment (ECF No. 14), Plaintiff's Response in Opposition thereto (ECF No. 15), Defendants' Reply in further Support thereof (ECF No. 16), and Plaintiff's Surreply in further Opposition thereof (ECF No. 19). For the following reasons, Defendants' Motion is denied.

### Factual Background

Plaintiff alleges that Defendants violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 630, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and the Pennsylvania Human Relations Act ("PHRA"), 42 Pa. Stat. Ann. § 952.

1

Born in 1954, Plaintiff is a former preventative maintenance technician who had worked for Sears Holding Corp. for thirty-eight years before he was terminated.  Pl.'s Mem. Opp'n. Summ. J. Ex. A, at 25:13-14.  On May 13, 2010, a video camera depicted Plaintiff leaving Sears at approximately 10:35 a.m.; however, on May 14, he revised his time card to state that he had left at 2:00 p.m.  Pl.'s Opp'n. Ex. C, at 20:9-21:15.  When confronted with the accusation that he improperly revised his time card, Plaintiff stated that he could 1not remember the exact time that he left, and that he had his dates confused.  Pl.'s Opp'n. Ex. C, 67:6-10.  Lizanne Leh, Sears' former Director of Human Resources, testified that "[she] believe[d] [Plaintiff] may not have remembered on this occasion."  Pl.'s Opp'n. Ex. C, at 67:11-17.

Ryan Fysz, Sears' Loss Prevention Manager at the Neshaminy Mall store, witnessed Plaintiff depart work early through a side door, Defs.' Mem. Supp. Summ. J. Ex. E, at 49:15-50:11, and subsequently brought the alleged time clock fraud to the attention of Frank Macgregor, the Store Manager.  Defs.' Mem. Ex. E, Leh 1.  Thereafter, Macgregor, Stephen Cassidy—one of Plaintiff's supervisors—Leh, and Fysz jointly investigated the matter, and met with Plaintiff.  Defs.' Mem. Ex. E, Leh 2. During the meeting, Plaintiff admitted that he "left early" on May 13, 2012.  Defs.' Mem. Ex. B, at 97:9-18.  Macgregor made the final

decision to fire Plaintiff because of Plaintiff's "violation of company policy."  Defs.' Mem. Ex. F, ¶ 4.[1]

Plaintiff alleges that "one to two months before he was ultimately terminated," Leh and Macgregor told Plaintiff: "You're 55, take the early retirement, but we are not going to give you your pension and you're not going to get your 401(k), and we guarantee you are not going to collect unemployment."  Pl.'s Opp'n. Ex. A, at 50:14-51:15.  Plaintiff further alleges that Leh once said to him: "Oh Joe, Joe, what are we going to do with you? You ought to just retire."  Pl.'s Opp'n. Ex. A, at 53:6-16.

Moreover, Plaintiff asserts that Cassidy frequently assigned him time-consuming work that was not included in his job description, and that took up large portions of his day.  Pl.'s Opp'n. Ex. A, at 40:9-14.  Plaintiff also testified that when he was unable to successfully complete all of his work in a given day, Cassidy made comments to him such as: "Oh, you are 55, you should quit anyway" and "You're old . . . you're too slow . . . you're 55, why don't you retire?"  Pl.'s Opp'n. Ex. A, at 41:1-24.  Furthermore, Plaintiff alleges that Cassidy referred to him as an "old fart."  Id. at 82:17-83:16.  Defendants deny that Cassidy, Leh, and Macgregor made any of the alleged comments referencing Plaintiff's age.  Defs.' Mem. at 9, 11.

---

[1] Sears' management ultimately permitted Plaintiff to retire instead of terminating his employment so that Plaintiff could retain the privileges afforded retirees.  Defs.' Mem. Ex. E at 39:17-40:8.

Both parties stipulate that after Plaintiff was fired, Barrett Johns, who was born in 1978, ultimately replaced him. See Pl.'s Opp'n. Ex. H, at No. 6, p. 8. Jones previously worked as a shoe salesman, and he reportedly had no prior experience as a preventative maintenance technician. Pl.'s Opp'n. Ex. E, at 34:1-19.

With regards to his alleged disability, Plaintiff claims that "[he] used to moan all the time . . . to everybody [he] came in contact with," Pl.'s Opp'n. Ex. A, at 67:17-68:1, and that "[he] constantly complained about his arthritis to many of his co-workers and supervisors, including Mr. Cassidy." Id. Cassidy, however, provided conflicting testimony regarding Plaintiff's complaints. He initially stated that Plaintiff would complain about his back and his elbow. Pl.'s Opp'n. Ex. B, at 26:1-8. He later testified, however, that Plaintiff never complained about his back or elbow. Pl.'s Opp'n. Ex. B, at 46:5-10. Gallagher also provided conflicting testimony regarding the frequency of Plaintiff's complaints. See Pl.'s Opp'n. Ex. E, at 13:3-11.

Plaintiff asserts that he requested electric tools and assistance in lifting heavy objects due to the arthritis in his hands. Pl.'s Opp'n. Ex. A, 68:22-69:16, 75:13-76:5. Plaintiff further alleges that his accommodation requests were only sometimes granted, and that the auto center manager would tell other workers that they were not supposed to help Plaintiff.

Pl.'s Opp'n. Ex. A, at 74:21-75:6.  Cassidy acknowledges that Plaintiff requested assistance with heavy lifting; however, Cassidy denies that Plaintiff ever directly or indirectly requested power tools.  Pl.'s Opp'n. Ex. B, at 35:8-37:18.

Defendants now move for summary judgment on Plaintiff's claims that Defendants wrongfully terminated Plaintiff because of his age and his alleged disability.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party's assertions can be supported by "particular parts of materials in the record, including depositions, documents . . . affidavits or . . . interrogatory answers."  Fed. R. Civ. P. 56(c)(1)(A).  Summary judgment is properly entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In reviewing the grant for a motion for summary judgment, we (1) resolve conflicting evidence in favor of the nonmovant (2) do not engage in credibility determinations, and (3) draw all reasonable inferences in favor of the nonmovant. See Davis v. Portline Transp. Mar. Int'l, 16 F.3d 532, 536 n.3 (3d Cir. 1994).

## Discussion

When analyzing discrimination claims under the ADEA, ADA, and the PHRA, the Court applies to each statute the three-part burden-shifting framework articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  The Court's analysis of Plaintiff's ADEA and ADA claims subsumes an analysis of Plaintiff's PHRA claims.  <u>See</u> <u>Kelly v. Drexel Univ.</u>, 94 F.3d 102, 105 (3d Cir. 1996); <u>Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.</u>, 60 F.3d 153, 156-57 (3d 1Cir. 1995).

Under the first prong of the <u>McDonnell Douglas</u> analysis, a plaintiff must meet his initial burden of establishing a *prima facie* claim of discrimination.  <u>Jones v. Sch. Dist. of Phila.</u>, 198 F.3d 403, 410 (3d Cir. 1999).  Next, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's [termination]." <u>McDonnell Douglas</u>, 411 U.S. at 802.  Finally, the burden shifts back to the plaintiff who "must . . . show by a preponderance of the evidence that the employer's explanation is pretextual." <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994); <u>see also</u> <u>McDonnell Douglas</u>, 411 U.S. at 804.[2]

### I. Plaintiff's Prima Facie Case of Age Discrimination

Plaintiff has established a *prima facie* case of age discrimination under the ADEA.  To successfully establish a *prima facie* case, a plaintiff must show that he or she: (1) is a member

---

[2] Throughout the <u>McDonnell Douglas</u> analysis, the burden of persuasion remains on the employee. <u>Starceski v. Westinghouse Electric Corp.</u>, 54 F.3d 1089, 1095 (3d Cir. 1995).

6

of a protected class, (i.e., forty years of age or older); (2) was qualified for his or her position; (3) suffered an adverse employment decision; and (4) was ultimately replaced by a person "sufficiently younger to permit an inference of age discrimination." Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir. 2001); Keller v. Ortix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997).

First, it is undisputed that Plaintiff, born in 1954, was a member of a protected class at the time he was discharged. Second, a finder of fact could reasonably infer that Plaintiff was qualified for his position. See Pl.'s Opp'n. at 23.[3] Third, Plaintiff did not voluntarily retire; instead, Macgregor and the Sears management team made an official decision to terminate his employment. Finally, because Defendants hired a replacement twenty-four years Plaintiff's junior, a finder of fact could reasonably infer that age discrimination was a motivating factor in Plaintiff's termination. Therefore, Plaintiff has satisfied each requirement 1to establish a *prima facie* case of age discrimination under the ADEA.

## II. Plaintiff's Prima Facie Case of Disability Discrimination

To establish a *prima facie* case of discrimination in violation of the ADA, a plaintiff must show: (1) he is disabled under the standard outlined in the ADA; (2) he is otherwise

---

[3] Defendants have not introduced any additional evidence to refute that Plaintiff was qualified.

qualified to perform the essential functions of the job with or without reasonable accommodations by the employer; and (3) he has suffered an adverse employment decision <u>as a result of</u> discrimination.  <u>Gaul v. Lucent Tech., Inc.</u>, 134 F.3d 576, 580 (3d Cir. 1998) (citing <u>Shiring v. Runyon</u>, 90 F.3d 827, 831 (3d Cir. 1996)).[4]

*A. Plaintiff's Disability*

Under the revised ADAAA standards, "disability" is defined using a three-prong approach.  A plaintiff must: (1) have "a physical or mental impairment that substantially limits one or more major life activities; (2) [demonstrate] a record of such an impairment; or (3) [be] "regarded as having such an impairment." 42 U.S.C. §12102(1).  The EEOC's interpretation of the ADAAA notes that "substantially limits" is "not meant to be a demanding standard."  29 C.F.R. §1630.2(j)(1)(i)(2011).  Congress has specified that examples of major life activities include: "caring for oneself, *performing manual tasks*, seeing, hearing, eating, sleeping, walking, standing, *lifting*, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and *working*."  42 U.S.C. §12102(2)(A).

Plaintiff testified that due to his arthritis, hernia, and rotator cuff issues, he was at times unable to work, and that he required assistance lifting and performing manual tasks.  <u>See</u>

---

[4] The Court's analysis in this instance is also governed by the ADA Amendments Act ("ADAAA") of 2008, which went into effect on January 1, 2009. Pub.L. No. 110-325, 12 Stat. 3553.

Pl.'s Opp'n. Ex. A, at 59-60, 63.  Plaintiff's injuries limited his ability to fully function as an employee, and he was forced to request accommodations and to take breaks during work. Accordingly, a reasonable factfinder could find that "a major life activity" was "substantially impaired."

   *B. Plaintiff's Proof That He Was a Qualified Individual*

   The second prong of an ADA *prima facie* claim requires a plaintiff to establish that he is a qualified individual with a disability who, "with or without reasonable accommodations, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8).  For a plaintiff to be considered qualified under the ADA, he must satisfy the prerequisites for the position, such as possessing the appropriate educational background, employment experiences, skills, and licenses. Hohider v. UPS, 574 F.3d 169, 189 (3d Cir. 2009) (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 311 (3d Cir. 1999)).

   Plaintiff had been employed by Sears for thirty-five years before he was discharged and thus it is reasonable to infer that he was qualified for his position as a preventative maintenance technician.  Defendant does not argue to the contrary.  Plaintiff has established that he was qualified to perform the essential functions of his job.

  *C. Adverse Employment Decision as a Result of Discrimination*

   As to the third prong of the *prima facie* case, a reasonable factfinder could conclude that Plaintiff suffered an adverse

employment decision as a result of discrimination. Plaintiff testified that Cassidy told him he was "too slow" each time Plaintiff handled a tractor shipment. Pl.'s Opp'n. Ex. A, at 44:4-19. Furthermore, Cassidy "wrote up" Plaintiff for not increasing his processing speed. Pl.'s Opp'n. Ex. B, at 32:20, 33:9. Finally, Plaintiff testified that he was terminated, in part because of his health. Pl.'s Opp'n. Ex. A, at 11:8-12:7. Under the totality of these circumstances, a reasonable factfinder could conclude that Plaintiff was terminated as a result of discrimination against him based on disability. Accordingly, Plaintiff has satisfied the requirements for a *prima facie* case of disability discrimination.

### III. Plaintiff's Retaliation Claim

Plaintiff must establish a *prima facie* case of retaliation against him based on the accommodations he requested. To establish a *prima facie* case of retaliation, a plaintiff must show that: "(1) [he] engaged in a protected employee activity; (2) the employer took adverse employment action after or contemporaneous with [his] protected activity; and (3) a causal link exists between [his] protected activity and the employer's adverse action." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000).

First, Plaintiff was engaged in a protected activity. Protected activities against which discrimination is prohibited

include requesting an accommodation or complaining of disparate treatment.  Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 188 (3d Cir. 2010) (citing Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 191 (3d Cir. 2003)).  However, an employee is not required to make a formal statement asserting that he is requesting an accommodation.  Colwell v. Rite Aid Corp., 602 F.3d 495, 507 (3d Cir. 2010); see also Leeds v. Potter, 249 F. App'x 442, 449 (6th Cir. 2007).

Here, although Plaintiff never explicitly used the word "accommodation" in his request for assistance, he nevertheless stated that he requested electric tools from Cassidy, Pl.'s Opp'n. Ex. A, at 68:22-69:16, and requested help lifting heavy boxes, Pl.'s Opp'n. Ex. A, at 70:11-72:13.  Cassidy and Gallagher confirmed that Plaintiff requested assistance with lifting heavy objects.  Pl.'s Opp'n. Ex. B, at 37:6-14; Ex. E, at 21:17-23:4.  A factfinder could reasonably conclude Plaintiff engaged in protected conduct.

As we have stated above, Defendants have satisfied the second prong of the *prima facie* retaliation claim because Defendant was forced to retire.  See supra, Part II.C.

Third, there is a causal relationship between Plaintiff's protected activity, and Defendants' decision to terminate Plaintiff.  The Third Circuit has held that an inference of retaliation exists when an employee is terminated shortly after engaging in a protected activity.  See Fasold v. Justice, 409 F.

3d 178, 190 (3d Cir. 2005) (citing Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 178 (3d. Cir. 1997)).  The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific.  Kachmar, 109 F.3d at 178.  Plaintiff engaged in a protected activity—requesting an accommodation—as few as two weeks before he was ultimately terminated.  Pl.'s Opp'n. Ex. J, at ¶¶ 2-4.  This, combined with Defendants' allegedly discriminatory remarks and disciplinary "write ups," creates a genuine issue of material fact as to causation.  Plaintiff has sufficiently established a prima facie case of retaliation.

    IV. Defendants' Proffered Reason for Firing Plaintiff

Next, the burden of production shifts to Defendants to "articulate some legitimate, nondiscriminatory reason" for Plaintiff's termination.  McDonnell Douglas, 411 U.S. at 802.  This is a "relatively light burden" on Defendants.  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  Because Plaintiff signed the "Hourly Associate Compliance Checksheet," Defs.' Mem. Ex. B, at 102:16-103:5, and because Plaintiff testified that he understood that he was required to record the hours he worked accurately, Defs.' Mem. Ex B, at 46:17-19, Plaintiff knowingly violated Sears' "work for pay" policy, and therefore Defendants have adequately articulated a legitimate reason for terminating Plaintiff's employment.

    V. Plaintiff's Evidence of Pretext or Discriminatory Intent

Finally, under the third prong of McDonnell Douglas, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that Defendants' stated reasons for terminating Plaintiff were pretextual or that Defendants possessed discriminatory intent in firing Plaintiff.  Sherind v. E.I. DuPont de Nemours and Co., 100 F. 3d 1061, 1070 (3d Cir. 1996); see also Reeves v. Sanderson Plumbing Prods, Inc., 530 U.S. 133, 141 (2000).  A plaintiff may defeat a motion for summary judgment "by pointing to either direct or circumstantial evidence whereby the factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was "more likely than not a motivating or determinative cause of the employer's actions." Fuentes, 32 F.3d at 764.

Regarding both his ADEA and ADA claims, Plaintiff could possibly establish a pretext or discriminatory intent in several ways. First, Plaintiff has established pretext based on evidence of disparate treatment to a similarly-situated employee.  See Simpson v. Kay Jewelers, 142 F.3d 639, 645 (3d Cir. 1998). Former Sears Employee Matt Olviani, who was in his 20s, did not have a disability, committed the same infraction as Plaintiff, and was disciplined on multiple occasions in 2010; however, Olviani was not terminated as a result of his time card discrepancies.  Pl.'s Opp'n. Ex. C, at 26:9-28:18.  Defendants' disparate treatment of Plaintiff could lead a reasonable

13

factfinder to conclude that discrimination was more likely than not a cause for Defendants' decision to terminate Plaintiff.

Second, Plaintiff could reasonably establish pretext by alleging that Cassidy, Leh, and Macgregor made various age-specific discriminatory comments directed towards Plaintiff on multiple occasions. See, e.g., Pl.'s Opp'n. Ex. A, at 44:4-19, 50:14-51:15, 82:17-83:16.[5] Third, Plaintiff could persuade a factfinder that Defendants harbored discriminatory intent based on the Subordinate-Bias Theory.  The "Subordinate-Bias" or "Cat's Paw" Theory maintains that an employee's termination can be tainted as discriminatory if an individual who contributes to the decision to terminate the employee possesses discriminatory animus, even if that individual does not make the ultimate employment decision. Brewer v. Bd. of Trs., 479 F.3d 908, 917-18 (7th Cir. 2007); accord Abrams v. Lightolier Inc., 150 F.3d 1204, 1214 (3d Cir. 1995).  A reasonable factfinder could infer that Cassidy likely had some input into the decision to fire Plaintiff: Cassidy was Plaintiff's supervisor, he "did not

---

[5] Defendants, however, argue that "a plaintiff cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment." Solomon v. Society of Automotive Engineers, 41 F. App'x 585, 586 (3d Cir. 2002) (citing Celotex Corp., 477 U.S. at 324)). Notwithstanding, Fed. R. Civ. P. 56(c)(1)(A) lists depositions as one of several materials that may be cited to assert that a fact is genuinely disputed.  The Supreme Court has stated that "Rule 56[ ] . . . requires the nonmoving party to go beyond the pleadings and by [the party's] own affidavits, or by the '*depositions*, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324.  Neither Rule 56 nor Celotex makes a distinction between a plaintiff's own testimony and the testimony of others.

believe" that Plaintiff could not remember what time he clocked out, Defs.' Mem. Ex. C, at 47:4-8, and Cassidy was privy to the meeting between Plaintiff and Sears' management when Plaintiff's alleged time clock fraud was investigated, Defs.' Mem. Ex. E, Leh 2.  Therefore, Cassidy's alleged discriminatory statements, which we must accept as true, could be sufficient to impute age discriminatory intent to Macgregor.  Finally, Plaintiff could establish pretext based on disability discrimination, because Cassidy "wrote up" Plaintiff for not increasing his processing speed, Pl.'s Opp'n. Ex. B, at 30:22-33:9, and because he commented that Plaintiff was "too slow," Pl.'s Opp'n. Ex. A, at 41:1-24.  A reasonable factfinder could be persuaded that Defendants' grounds for firing Plaintiff were pretextual or that they had a discriminatory intent.

### VI. Plaintiff's Duty to Mitigate Damages

A plaintiff who brings claims for front pay and back pay under the ADEA or ADA has a duty to mitigate [his] damages by "exercis[ing] reasonable diligence in [his] efforts to secure employment."  Tubari, Ltd. v. NLRB, 959 F.2d 451, 454 (3d Cir. 1992).  Mitigation of damages is not a required element of a discrimination claim, and "mitigation is a claimant's duty that arises at the damage stage of a discrimination case when the amount is determined."  Caufield v. Ctr. Area Sch. Dist., 133 F. App'x 4, 10 (3d Cir. 2005).  Accordingly, Plaintiff's ability to recover front pay and back pay is not yet ripe for adjudication.

See <u>Linhart v. Zitelli & Broadland</u>, Civ. No. 10-530, 2011 WL 4971729, at *14 (W.D. Pa. Oct. 19, 2011). Notwithstanding, genuine issues of material fact remain regarding whether or not Plaintiff adequately attempted to mitigate his damages.

## **CONCLUSION**

For the reasons so stated, Defendants' Motion for Summary Judgment is denied.

```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH SOCOLOSKI,               :       CIVIL ACTION
                                :
            Plaintiff,          :       NO. 11-3508
                                :
      v.                        :
                                :
SEARS HOLDING CORP.             :
and                             :
SEARS, ROEBUCK and CO.,         :
                                :
            Defendants.         :
```

**ORDER**

AND NOW, this 31st day of July, 2012, upon consideration of Defendants' Motion for Summary Judgment (ECF No. 14), Plaintiff's Response in Opposition thereto (ECF No. 15), Defendants' Reply in further Support thereof (ECF No. 16), and Plaintiff's Surreply in further Opposition thereof (ECF No. 19),  it is hereby ORDERED that Defendants' Motion for Summary Judgment is DENIED.

BY THE COURT:


**s/J. Curtis Joyner**

J. CURTIS JOYNER, C.J.